### HOWBERT v. NORRIS. *
### No. 952.

Circuit Court of Appeals, Tenth Circuit.
Sept. 20, 1934.

Walter L. Barlow, of Washington, D. C. (Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for appellant.

*Rehearing denied Nov. 2, 1934.

James D. Benedict, of Denver, Colo. (Horace Phelps and Horace F. Phelps, both of Denver, Colo., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

In August, 1918, Charles M. Norris sold certain shares of capital stock in the Scully-Norris Company, a Colorado corporation. The purchaser paid $600 in cash and executed three promissory notes evidencing the balance of the purchase price. The first was for $5,000 and matured six months after date; the other two were for $7,236.02 each and fell due twelve and eighteen months after date, respectively. Each note was paid when due, that is the first and second in 1919 and the third in 1920. Norris received a net profit of $14,712.54 in the transaction, but failed to make any reference to it in his income tax returns for the years 1918, 1919, and 1920.

In June, 1924, a deputy collector called on Norris, investigated the situation, and prepared an amended return for the taxable year 1918, in which the entire profit was included. Norris executed and caused the return to be filed, also a waiver consenting to the assessment and collection of any tax due under any return made for the year 1918, irrespective of any period of limitation provided by law for its assessment and collection. After protesting and challenging the validity of the tax reflected by the amended return, and following a reaudit of the books resulting in reduction of the amount due, he paid $2,338.78. That was done in January, 1926. At about the same time he executed an offer to compromise the claimed interest and penalties for $140, and the offer was subsequently accepted.

In November, 1929, a claim for refund of $2,309.15 for the taxable year 1918 was filed. It is set forth in the complaint and contains the following which reflects the theory and method of computation upon which the cause of action herein is predicated:

"It will be readily seen that the initial payment received by me during the calendar year 1918, other than evidences of indebtedness of the purchaser, totaled $600.00, which was paid in cash, which initial payment is approximately 3-¼% of the finally adjusted sale price of $18,462.54. Further, an examination will reveal that the profit realized or to be realized is 79.69% of the sale price and the cost is 20.31% of the sale price. Applying 79.69% of $600.00 actually collected by me in cash during 1918 will bring about a taxable profit to me for 1918 of $478.14 instead of $14,712.54.

"An adjusted statement of income and deductions and resultant tax liability for 1918 would then appear as follows:

| | | |
|---|---:|---:|
| Salary received from Scully-Norris Motor Co. of Denver, Colorado | | $4,780.53 |
| Pro rata profit on sale of stock of Scully-Norris Motor Company | | 478.14 |
| Rents, Net | | 47.50 |
| Interest | | 2.16 |
| Total | | $5,308.33 |

| | | | |
|---|---:|---:|---:|
| Interest Paid | | $76.00 | |
| Taxes Paid | | 55.94 | |
| Contributions: | | | |
| National Red Cross Society | $27.00 | | |
| United War Societies | 50.00 | | |
| Boy Scouts | 5.00 | 82.00 | 213.94 |
| Net Taxable Income | | | $5,094.39 |
| Less Personal Exemption | | | 2,000.00 |
| Balance Taxable at 6% | | | $3,094.39 |
| Normal tax at 6% on $3,094.39 | | $185.66 | |
| Surtax at 1% on $94.39 | | .94 | |
| Total tax liability | | $186.60 | |
| Tax previously paid during 1919 | $156.97 | | |
| On January 25, 1926 | 2,338.78 | 2,495.75 | |
| Tax overpaid under statements set forth in 2nd petition | | $2,309.15." | |

Norris was advised by letter from the Commissioner that the claim had been allowed, but was subsequently informed in like manner that it was disallowed. This suit followed to recover the amount of the claim as an overpayment of taxes for the year 1918. A jury was waived and the cause submitted to the court. Judgment was rendered for Norris.

The sale was a casual one and the asserted right to report the income therefrom on the installment plan is founded upon the provisions of section 212 (d) of the Revenue Act of 1926 (made retroactive by section 1208 of the same act [26 USCA § 953a]), 26 USCA § 953 (d). That statute is in this language:

"Under regulations prescribed by the commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the pur-

chase price, the income may, under regulations prescribed by the commissioner with the approval of the Secretary, be returned on the basis and in the manner prescribed in this subdivision. As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

 Prior to the Revenue Act of 1926, Congress had authorized only the cash and the accrual bases for income tax returns. However, recognizing the obvious hardship in applying either of those methods to sales upon the installment plan, the Commissioner by regulations authorized the vendor to distribute the purchase price through the years during which it was actually received. But in 1926, the Board of Tax Appeals disapproved that policy because it was outside the two permitted methods. Thereupon Congress enacted section 212 (d) referred to, in order to empower the Commissioner to resume the previous policy. Burnet v. S. & L. Bldg. Corp., 288 U. S. 406, 53 S. Ct. 428, 77 L. Ed. 861.

The statute contemplates payment of income taxes on a different basis from that theretofore existing, not the escape of taxes in any form. The formula provided is that such proportion of each installment payment shall be returned for the taxable year during which it is actually received as the total profit realized or to be realized when payment is completed bears to the total sale price. But it is not sought to apply that formula here. Norris asserts that 79.69 per cent. of the sale price represents profit; he seeks to pay taxes on $478.14, being that proportion of the $600 received in 1918, and to exclude from consideration the remainder of such profit, exceeding $12,000, thereby rendering it immune from taxation in any amount because the time within which an assessment for the years 1919 and 1920 could be made and payment enforced expired five years after the return was due. We think Congress did not intend to create such a haven against payment of taxes in any form. No such asylum of immunity was contemplated. To permit a tax debtor to make the attempted use of the statute long after the bar of limitation has precluded assessment and collection would constitute a plain distortion of the legislative object and purpose. The retroactive provision of the statute indicates clearly a legislative intent that one having already paid his taxes on a cash basis may invoke the installment method and receive a refund for the difference resulting from the change due to smaller sums returned and lower rates, but that intent does not go to the extent of empowering a taxpayer to employ the procedure as a vehicle to escape taxes in toto upon more than 96 per cent. of a net realized profit.

 This is an action in assumpsit to recover money had and received. But an assumpsit of this kind is governed by equitable principles. United States v. Jefferson Electric Co., 291 U. S. 386, 54 S. Ct. 443, 78 L. Ed. 859; New York Life Ins. Co. v. Anderson (C. C. A.) 263 F. 527; Champ Spring Co. v. United States (C. C. A.) 47 F.(2d) 1; Duffin v. Lucas (C. C. A.) 55 F.(2d) 786; Hartwell Mills v. Rose (C. C. A.) 61 F.(2d) 441; Ralston Purina Co. v. United States (Ct. Cl.) 58 F.(2d) 1065. It would be grossly inequitable to permit the payment of the tax on $478.14, representing less than 4 per cent. of the enjoyed profit, allocate the balance to the years 1919 and 1920 where it would be free from liability under the statute of limitation, and by means of recovery herein evade all taxation on it. For that reason, such a shift cannot be made. Commissioner v. Moore (C. C. A.) 48 F.(2d) 526.

The judgment is reversed and the cause remanded for further proceedings in harmony herewith.

Reversed and remanded.