## WILLIAMS v. HARRISON, Collector of Internal Revenue.
### No. 7077.

Circuit Court of Appeals, Seventh Circuit.
March 27, 1940.

990

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Norman D. Keller, and Clarence E. Dawson, Sp. Assts. to the Atty. Gen., and William J. Campbell, U. S. Atty., and David L. Bazelon, Asst. U. S. Atty., both of Chicago, Ill., for appellant.

George K. Bowden and Casper W. Ooms, both of Chicago, Ill., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment of the District Court entered April 27, 1939, awarding plaintiff a refund of $68,913.34 with interest, assessed and collected by reason of Section 603, Title IV of the Revenue Act of 1932, 26 U.S.C.A. Int. Rev. Acts, entitled "Tax on Toilet Preparations, etc." The section reads: "There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10 per centum of the price for which so sold: Perfumes, essences, extracts, toilet waters, cosmetics [and numerous other designated toilet preparations] and any similar substance, article, or preparation, by whatsoever name known or distinguished; any of the above which are used or applied * * * for toilet purposes."

Mascara, an eye makeup, is the product upon which the tax was assessed and is conceded by the plaintiff to be a cosmetic within the terms of the statute.

The contested issues are:

1. Was the plaintiff a manufacturer or producer of mascara during the period from April 17, 1933 to January 31, 1935?

2. Did plaintiff, in making its sales of mascara after September 15, 1933, make those sales in reliance upon an existing ruling holding that the sales thereof by plaintiff were not taxable?

As to the first, it is the contention of the defendant that the plaintiff was a "manufacturer or producer" within the language of the statute and thus liable for the tax, while plaintiff contends to the contrary. As to the second, plaintiff contends that the sales were made in reliance upon a ruling of the Treasury Department and, that there was no liability by reason of Sec. 1108 (b) of the Revenue Act of 1926, 26 U.S.C.A. Int. Rev. Acts, while the defendant contends to the contrary.

It appears that it will be necessary to consider and decide the second issue only in case the first is decided favorably to the defendant. We shall, therefore, at this point, relate the facts material to the first issue.

The cause was tried below by the court, without a jury, and findings of fact and conclusions of law were made. There appears to be no material dispute regarding the evidence or its sufficiency to support the findings. It seems important, however, to relate a summary of the facts as found. Plaintiff is an individual doing business as Maybelline Company, not incorporated. For more than twenty years he has been engaged in the distribution of cosmetics and other products. Prior to 1918, he was in the mail order business, advertising and promoting the sales of various articles by mail. Since that time he has been engaged in the sale and distribution of cosmetics and other products. Among such are mascara, an eyebrow pencil, an eye shadow, a cream form of mascara, an eye-lash tonic cream, an eye cream, and an eye brush, all of

which articles and products plaintiff purchased from different manufacturing companies, by whom the cosmetic tax was paid. Such products were sold by plaintiff under his trade name, "Maybelline."

The only time that plaintiff manufactured a product was from 1926 to April, 1933, when he manufactured in his own place the stick mascara sold by him. On the latter date he discontinued its manufacture and resumed his practice of purchasing it from the manufacturer thereof. At this time he sold his manufacturing equipment to one Hewes, who began business as De Luxe Mascara Company, (herein referred to as "De Luxe") from whom plaintiff purchased the mascara, which was of a better grade than that previously manufactured by himself. It was conceded that the price paid by the plaintiff was the fair, market price. Also, that the plaintiff had no interest, financial or otherwise, with Hewes or De Luxe and no control over the ingredients used by that company in the manufacture of mascara. There is no contention but that the purchase was in good faith and at arm's length.

The product, as manufactured by De Luxe and as sold and delivered by it to the plaintiff, was in the form of small black cakes of two sizes, the smaller being about two inches long, one-fourth inch wide and one-eighth inch thick, and the larger about two and one-half inches long, seven-eighths of an inch wide and three-sixteenths of an inch thick. Each cake had embossed thereon plaintiff's trade-mark "Maybelline." From April 17, 1933, to January 31, 1935, (the period during which the tax was assessed) these mascara cakes were packed in boxes with a mirror in the lid, which plaintiff purchased from the Pictorial Paper Package Company of Aurora, Illinois. There was also inserted in the box a brush to be used in the application of the product which plaintiff purchased from the Autograph Brush Company of New York City. Prior to April, 1933, the boxes bore in small type the legend "Made by Maybelline Company." Shortly afterwards, the legend was changed by the removal of the words "Made by." Plaintiff performed upon the mascara cake no process or any act that would change its form, color or substance. There was also testimony by those engaged in the cosmetic trade that De Luxe was considered as a manufacturer of mascara and plaintiff as a distributor. The defendant accepted from De Luxe the manufacturer's tax of ten per cent. This tax was added by De Luxe sold mascara cakes only to plaintiff plaintiff and paid by the latter.

Substantially, these are the facts as found by the court. Defendant, however, calls attention to other facts appearing in the record which it regards as material. De Luxe in the statements rendered to the bearing the name "Maybelline," although cakes were sold to other parties with the name omitted. In 1933, plaintiff increased its national advertising, especially in magazines and on the radio. The attention of the public was called to "That Red and Gold Case" in which Maybelline was sold, and that it could be purchased in a tray and placed in the case, thus obviating the purchase of a second case. The name "Maybelline" was stressed as a registered tradename, which guaranteed its quality.

During the taxable period plaintiff used some letter heads on which appeared the statement "Manufacturers of the World's Largest Selling Line of Eye Beautifiers." It is evident, however, that these letter heads were printed during the period when plaintiff was engaged in the manufacture of the mascara and their use discontinued shortly after its manufacture was taken over by De Luxe.

The Commissioner of Internal Revenue denied plaintiff's claim for refund, hence the instant suit. The District Court concluded as a matter of law that Section 603 imposes the tax upon the sale by the manufacturer and not upon any subsequent sale that might be made by a distributor of the article in the form in which it was purchased by the consumer, and also that the packing of mascara cakes purchased in bulk did not constitute the manufacture of a taxable article within the provision of the act. Did that court announce a proper conclusion? The answer to the question is decisive of the issue to be determined.

In considering the question, it is important to keep in mind that the defendant seeks to have plaintiff designated as a manufacturer or producer of cosmetics within the terms of Section 603, by reason of his purchase from the manufacturer of the mascara cake (the taxable article), and without changing its form, size or characteristics, placing the cake in a box (not taxable) in connection with a brush (not taxable) to be used in the application of the mascara, and selling the box and contents under his tradename of "Maybelline" (also not taxable). The defendant argues it is plainly the intent

992

of the act that plaintiff be held to be a manufacturer or producer under such circumstances. Article IV of Regulation 46, promulgated under the Revenue Act of 1932, so far as here material, reads: "Who is a manufacturer or producer.—As used in the Act, the term 'producer' includes a person who produces a taxable article by processing, manipulating, or changing the form of an article, or produces a taxable article by combining or assembling two or more articles."

The last clause of this definition is emphasized as being clearly applicable to the acts of the defendant. It seems apparent, however, that after the process of assembling was complete, the taxable article was the same as before. In other words, of the articles sold by the plaintiff, mascara was the taxable article which admittedly was not manufactured by him. How the placing of that article with other articles not taxable and where the combined result was a taxable article not different from that already existing, is to be designated as a manufacturing process, is not easy to comprehend.

The defendant, in support of its theory, places great stress upon Section 619 of the Revenue Act, 26 U.S.C.A. Int. Rev. Acts, entitled "Sale Price." [1]

It will be noted that Par. (a) provides that "any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment" shall be included in the price for which the article is sold. Defendant states in its brief that "Sub-section (b) of Section 619 leaves no doubt that Congress intended to tax the sale of a cosmetic in the coverings or container in which it is placed for use by the consumer for toilet purposes. This section says, 'If an article is—(1) sold at retail': then the

tax shall be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof. The fact that the statute provides for a recomputation of the price of an article sold at retail seems to be sufficient to show conclusively that Congress contemplated taxing the sale of an article in its finished, marketable form."

We are unable to accept this argument. In fact, a study of this section is convincing that it has no application to the instant situation. Clearly, it has reference to a sale by the manufacturer or producer, and in such case furnishes the basis on which the tax is to be computed. Par. (a) describes what must be included, as well as what may be excluded, in fixing the sale price. Par. (b) provides the method of fixing the sale price where the taxable article is sold in other than wholesale lots, but in all events it is upon the sale made by the manufacturer or producer. Any doubt in this respect is dispelled by the concluding clause of the section "the tax under this title shall * * * be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Commissioner." The interpretation sought to be placed upon this section by the defendant would mean, or at any rate might mean, that the tax could be imposed upon the wholesaler or retailer, a result not contemplated by the statute. This section, in our judgment, is applicable only where the taxable product is sold by the manufacturer or producer thereof.

The cases cited by the defendant do not support its argument in this respect. The one most heavily relied upon is that of Luzier's, Inc. v. Nee, D.C., 24 F.Supp. 608, affirmed 8 Cir., 106 F.2d 130. There the one sought to be charged with the tax was ad-

[1] "(a) In determining, for the purposes of this title, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this title, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the

Commissioner, in accordance with the regulations.

"(b) If an article is—
"(1) sold at retail;
"(2) sold on consignment; or
"(3) sold (otherwise than through an arm's-length transaction) at less than the fair market price;
the tax under this title shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Commissioner."

mittedly engaged in the manufacture and sale of the taxable article. It disposed of its product through agents with assigned territory. The question before the court was as to whether the Commissioner had employed the proper basis in determining for taxation the sale price of the product. In making such determination, it was held, and we think properly so, that Section 619 was applicable. The court, on page 610 of 24 F.Supp., said: "In case of retail sales: In case the manufacturer sells at retail, then it is provided by said Section 619 that the Commissioner shall compute the tax 'on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof', and that this price is to be 'determined by the Commissioner.' "

Another case relied upon is that of Bourjois, Inc. v. McGowan, D.C., 12 F.Supp. 787, affirmed 2 Cir., 85 F.2d 510. In that case the taxpayer organized a sales corporation in which plaintiff owned all of the stock. In other words, the sales corporation was the agent of the manufacturer. The court, on page 791 of 12 F.Supp., said: " * * * Sales by the sales companies were really sales of the plaintiff. Advertising and sales promotion, ostensibly carried on by the sales corporations, were, indirectly, the work of the plaintiff. Bourjois, Inc., from whom alone Bourjois and Barbara Gould products can be obtained, is thus found to be selling its products at the prices charged by the sales corporations."

The court concluded that Section 619 was applicable in determining the sale price (the taxable item), for the reason that the sales agency was merely the agent of the taxpayer and that the price received by the sales agency was as a matter of fact the selling price of the taxpayer who had sole control over the sales agency. To the same effect is Inecto, Inc. v. Higgins, 21 F.Supp. 418.

It will be observed in all these cases that the court was considering the basis for determining the sale price. For such purpose Section 619 was held applicable. No question was raised but that the taxpayer was under Section 603. In the instant case there is no question of determining a base on which to calculate the amount of the tax. The question is whether plaintiff comes within the meaning of Section 603. Was he the taxpayer?

Thus, we think it is clear that these cases fail to support the defendant's contention.

They would be applicable to De Luxe as the manufacturer, if its products were sold through the plaintiff as its agent. In such a situation, De Luxe would be liable for the tax by reason of Section 603, and the sale price of its products determinable by Section 619. In the instant case, however, it is admitted, or at any rate not disputed, that plaintiff is an entity entirely separate from De Luxe, and that neither has any control of nor interest in the other.

Whichever way we look for the correct solution of the problem before us, we find ourselves forced to return to our original premise, that is, whether plaintiff is a manufacturer or producer within the meaning of Section 603. Article 22 of Treasury Regulation 46 provides in part:

"Scope of tax.—The tax attaches to the sale by the manufacturer of the articles enumerated in Section 603 and similar articles commonly or commercially known as toilet articles, which are used or applied, or intended to be used or applied, for toilet purposes. * * *

"The tax will not attach to an article which is not a finished product or is not susceptible of use for toilet purposes but is only suitable for use in the manufacture of articles subject to tax, * * *"

It is insisted that this language is such as to fix the liability upon plaintiff for two reasons, (1) that until the mascara cake was assembled in a container with a brush, it was not intended to be used or applied for toilet purposes and could not be used as such, and (2) that the mascara cakes are not susceptible of use for toilet purposes but are only used by the plaintiff in the production of an article suitable for such use. We think both of these points are without merit. Certainly, it was intended by De Luxe that the mascara cake be used for toilet purposes—so far as we are advised it could not have been used for any other purpose—and it is equally certain that plaintiff had knowledge of such purpose when the mascara was purchased by him. In conformity with defendant's reasoning, we suppose it could be argued that until it is placed in a barrel or sack flour is not intended for bread, and that bread is not intended for human consumption until it is placed in a wrapper. We do not claim to be experts in the use of mascara—in fact, we are without experience—but we think that it is "susceptible of use for toilet purposes" whether sold in a box, sack or wrapper. It may be necessary to have a brush for its application,

but even so, there is no necessity that the brush be purchased with the mascara.

Defendant does not claim that the plaintiff engages in "processing, manipulating or changing the form of the mascara" as described in Article IV (quoted heretofore), but claims instead that he "produces a taxable article by combining or assembling two or more articles." We do not think the assembling of a taxable article, complete in itself, with other articles not taxable, results in another and different taxable article. Before the articles were combined, the taxable article was mascara, and after the combination was effected the taxable article remained mascara.

Defendant propounds this query: " * * * Is it necessary in order to be a manufacturer or producer under this statute that one should actually fabricate the taxable article, or, in this case, actually mix the mascara and mold it into a cake? Is it the manufacturing that is taxed or is it the sale"?

We are informed that the latter question was answered by the Supreme Court in Indian Motocycle v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277. As we understand the case, the answer as might be expected was that the tax is upon the sale by the manufacturer. The court, on page 574 of 283 U.S., on page 602 of 51 S.Ct., 75 L. Ed. 1277, said: " * * * It is levied as of the time of sale and is measured according to the price obtained by the sale. It is not laid on all sales, but only on first or initial sales—those by the manufacturer, producer or importer. Subsequent sales, as where purchasers at first sales resell, are not taxed. * * *"

We do not think the question or the answer throws any light upon the instant situation.

 Defendant also presses the point that by the use of the trade name "Maybelline" plaintiff greatly enhanced both the volume and the selling price of the taxable article. We do not doubt that this is a correct statement, but the statute does not impose a tax upon the use of a trade name or the increase in price or volume which results from its use, unless the use thereof is by the manufacturer of the taxable product. We are unable to perceive how plaintiff's use of a trade name is material in determining whether he is the manufacturer of a product admittedly purchased from another.

Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526. It is a matter of common knowledge that clothes, hats, shoes and many other articles are sold under the trade-name of the wholesale or retail dealer who has nothing to do with their manufacture.

 Defendant calls attention to the fact that there are only two decisions contrary to its contention, namely, Superior Products Co. v. Thomas, D.C., 32 F.Supp. 360, decided February 25, 1938, and Campana, Inc. v. Harrison,[1] decided May 5, 1939 by the Northern District of Illinois, Eastern Division. The holding in each of these cases is to the effect that one who purchases toilet preparations, and places them in a box or container in which they are to be sold at retail, is not a manufacturer thereof within the meaning of Section 603. On the other hand, of the many cases cited and discussed by the defendant, some of which we have discussed, none bears on the vital question here presented, that is, whether the plaintiff was a manufacturer or producer.

In 1933, the General Counsel of the Bureau of Internal Revenue issued his memorandum No. 11,522, construing Section 603, as well as Section 619. He goes into the construction of these sections in great detail, but the length of his opinion makes it impracticable to include it here. Among other things he expressly considers and discusses the question whom should be regarded as the manufacturer within the meaning of Section 603. As one of his illustrations he states: "In other cases the X company purchases material in bulk from the Y company and then repacks the bulk material into smaller packages." Query: Is the X company a manufacturer? The question is answered thus: "The X company does not manufacture a taxable article, change the form so as to produce a taxable article, or combine two articles into a taxable article. * * * In view of the foregoing, it is the opinion of this office that the purchase of bulk material by the X company and the repacking and sale thereof by it does not constitute the further manufacture of a taxable article by the X company." The General Counsel also discusses Section 619 in a manner that lends support to the conclusion reached heretofore by us. He states: "As heretofore pointed out, Section 619 merely deals with computation of the sales price and can lend no weight in

---

[1] No opinion for publication.

deciding who is the manufacturer." The defendant points out that this opinion by the General Counsel has neither the force nor effect of a regulation or determination by the Commissioner, Assuming such to be the case, yet the opinion so thoroughly and logically analyzes the numerous regulations of the Treasury Department (many of which are relied upon here) in connection with the pertinent provisions of the statute, that it cannot be ignored.

Both sides emphasize the congressional history of the provision in question and seek to demonstrate that such legislative history supports their opposing contentions. We have studied this history and find little, if anything, which supports either side. Plaintiff stresses the fact that a subcommittee on internal revenue taxation, on January 14, 1938, reported to the House Committee on Ways and Means with respect to the cosmetic tax, and stated that the tax was imposed upon the manufacturer of toilet preparations and not upon the distributor who purchased them in bulk and packaged them for resale. It was recommended that the statute be amended to provide for the imposition of the tax upon the distributor who packaged the toilet preparation. The proposed amendment was not adopted. It certainly can be argued with logic that the subcommittee was of the opinion that a distributor (such as plaintiff) was not a manufacturer, else there would have been no occasion for the proposed amendment. On the other hand it is conceivable that the full committee maintained an opposite view, and hence no amendment was proposed by the full committee. It seems to us, therefore, that this incident throws little, if any, light upon the proper interpretation.

Defendant argues that an interpretation of the applicable sections contrary to its contention, will result in a discrimination against cosmetic manufacturers who sell their products at retail as was the case in Luzier's, Inc. v. Nee, supra. If there be merit in this argument it is one which should be addressed to Congress rather than to the courts. In fact it is one which has been addressed to Congress as is evidenced by the amendment to Section 603 in the Revenue Act of 1939, 26 U.S.C.A. Internal Revenue Code, § 3401.

We are of the opinion that the District Court reached the proper conclusion as to the first contested issue. It is therefore not necessary to consider the second.

The judgment is affirmed.